Scottlynn J Hubbard, SBN 212970
**Disabled Advocacy Group, APLC**
12 Williamsburg Lane
Chico, CA 95926
Telephone: (530) 895-3252
Facsimile: (530) 894-8244
Email: USDCEast@HubsLaw.com

Attorney for Plaintiff

United States District Court

Eastern District of California

| | |
|---|---|
| Stacey Hubbard, | Case No. |
| Plaintiff, | |
| vs. | **Complaint** |
| Portfolio Recovery Associates, LLC, | |
| Defendant. | |

**INTRODUCTION**

1. Portfolio Recovery Associates, LLC ("Portfolio Recovery") is a collection agency located in Norfolk, Virginia.

2. On September 9, 2015, the Consumer Financial Protection Bureau (CFPB) ordered Portfolio Recovery to overhaul its debt collection and litigation practices, and to stop reselling debts to third parties. Briefly, the company has a history of buying debts that are inaccurate, lacking documentation, or unenforceable. Without verifying the debt, the company would then collect payments by pressuring consumers with false statements and churning out lawsuits using robo-signed court documents.

3. Portfolio Recovery also filed lawsuits against consumers without having the intent to prove many of the debts, winning the vast majority of the lawsuits by default when consumers failed to defend themselves, and violating the Fair Debt Collection Practices Act and the Dodd-Frank Wall Street Reform and Consumer Protection Act.

4. Portfolio Recovery's practices were so offensive that the CFPB took action against the defendant for using deceptive tactics to collect debts. Specifically, Portfolio Recover was ordered to:

    a. <u>Stop reselling debts</u>: Portfolio Recovery is prohibited from reselling the debts it buys to other debt collectors. This prohibition was designed to protect consumers from the potential harm that results when Portfolio Recovery sells and resells debts that are inaccurate or lack the business records and information needed to collect them.

    b. <u>Refund millions of dollars to consumers</u>: Portfolio Recovery must pay $19 million in refunds, provide refunds where it collected payments by misrepresenting that an attorney had reviewed a debt or that collectors were calling on behalf of attorneys, and where it collected payments on judgments

1  that it should not have obtained because they were barred by the statute of
2  limitations from suing to collect the debt.

3        c.    <u>Cease collections on millions of dollars of debt</u>: Portfolio
4  Recovery must also stop collecting on $3 million of debt; release or move to
5  vacate all judgments and dismiss all pending lawsuits it filed past the statute of
6  limitations and stop any attempts to enforce or collect on those judgments,
7  estimated to have a face value of $3.4 million.

8        d.    <u>Stop collecting debts they can't verify</u>: Portfolio Recovery can't
9  collect unsubstantiated debt. Under the order, they must review original
10 account-level documents verifying a debt before collecting on it when, for
11 example, a consumer has disputed it, the seller didn't promise it was accurate
12 or valid, or the debt was part of a portfolio they knew included unsupportable
13 or inaccurate information.

14        e.    <u>Ensure accuracy when filing lawsuits</u>: Portfolio Recovery cannot
15 file lawsuits to enforce debts unless they have specific documents and
16 information showing the debt is accurate and enforceable.

17        f.    <u>Provide consumers information before filing suit</u>: Portfolio
18 Recovery must provide consumers with information about a debt, such as the
19 name of the creditor and charge-off balance, and offer to provide consumers
20 with original documents relating to the account before they are allowed to file
21 a lawsuit or threaten to file suit to collect the debt.

22        g.    <u>Use accurate affidavits</u>: Portfolio Recovery cannot use affidavits
23 to collect debts unless the statements contained in the affidavits specifically and
24 accurately describe the signer's knowledge of the facts and the documents
25 attached.

26
27
28

1          h.     <u>Reform collection of older debts</u>: Portfolio Recovery is prohibited from suing or threatening to sue to collect on time-barred debt.  They also cannot collect on such debt unless they disclose to consumers that they can't sue to collect it.

5. In issuing this penalty, the CFPB found that Portfolio Recovery knew (or should have known) that the debts it was collecting were inaccurate or could not legally be enforced based on contractual disclaimers, past practices of debt sellers, or consumer disputes.  Attached as Exhibit A is a true and accurate copy of that order.

6. Yet, despite the order, Portfolio Recovery continues to engage in the same deceptive and unfair collection practices identified by the CFPB.

**JURISDICTION**

7. This action arises out of Portfolio Recovery's repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), and the invasions of Stacey's personal privacy by the company and its agents in their illegal efforts to collect a consumer debt.

8. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

9. Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1391(b), as Portfolio Recovery transacts business in this district and a substantial portion of the acts giving rise to this action occurred here.

**PARTIES**

10. Plaintiff Stacey Hubbard is an adult individual residing in Butte County, California, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3).

11. Portfolio Recovery is a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6) and Calif. Civil Code § 1788.2(c).

**STATEMENT OF FACTS**

12. In early 2016, Stacey Hubbard learned that Portfolio Recovery had placed a derogatory item on her credit report. Specifically, her husband was attempting to refinance two mortgages when he learned that Portfolio Recovery claimed that Stacey owed an outstanding debt to HSBC Bank of Nevada N.A. (HSBC), in the amount of $7,267.00.

13. Portfolio Recovery had purchased, assigned or transferred that debt for collection, or was employed by HSBC to collect the debt.

14. Portfolio Recovery attempted to collect the debt and, as such, engaged in "communications" as defined in 15 U.S.C. § 1692a(2).

15. On February 26, 2016, Stacey's attorney contacted Portfolio Recovery *via* a certified letter (return receipt requested), informing them that a mistake had been made and requesting that the derogatory item be removed:

> It has come to my attention that your company has placed two derogatory items on our credit reports, which are enclosed for your convenience via CoreLogic Credco. … [W]e are disputing these alleged debts and expect you to remove all references thereto from [her] credit reports within thirty (30) days. Obviously, all future communications regarding this matter should be directed to my office and in writing.

The letter was delivered on February 29, 2016. A true and accurate copy of that letter is attached as Exhibit B.

16. The day after receiving her attorney's letter (literally … *the next day*), Portfolio Recovery sent an unsigned response, claiming that it had "conducted its investigation" and considered the dispute resolved in its favor:

-5-

> Portfolio Recovery [] has concluded its investigation of your client's dispute. In response to your dispute related to the above account, [the company] has enclosed additional documentation for your client's review. [It] now considers this dispute resolved in favor of our company.

Stacey was told that she could make her check payable to "Portfolio Recovery Associates, LLC" and told to send it to them in Norfolk, Virginia. She was also provided a three-page balance sheet, documenting the amounts she purportedly owed, but no debt originating documents were provided. Attached as Exhibit C is a true and accurate copy of that letter.

17. On March 10, 2016, Stacey's attorney responded with a second certified letter (return receipt requested), again informing Portfolio Recovery that it had made a mistake and requesting a full accounting of the (alleged) debt, including a copy of the original contract. In the alternative, he requested that the derogatory item be removed from his client's credit report:

> You may be surprised to learn that nameless letters – reprinting vague statements of purported amounts owed – do not install a sense of confidence in the average reader. Moreover, nothing in the information you provided confirmed that Stacey Hubbard incurred the debt in question. Considering the number of Stacey Hubbards that live in Greater Chico Area, *i.e.*, four, we must insist that you provide a full accounting, which includes a copy of the original contract; or remove the derogatory item from her credit report.

Exhibit D is a true and accurate copy of that letter.

18. Twelve days later, Portfolio Recovery responded with a letter informing Stacey's attorney that, because (1) they had already responded to his first letter; (2) the dispute in the second letter was substantially similar to the dispute in the first; and (3) Stacey alleged no new facts or new information in which to form the basis of a new investigation, Portfolio Recovery would not conduct another investigation pursuant to the Fair Credit Reporting Act. The

-6-

1 company continued by stating that they would treat any future letters regarding the dispute "resolved," and consider the inquiry answered; and concluding that no further replies would be forthcoming unless Stacey "provided the information we need to assist your client. Our office consider the matter closed." Exhibit E is a true and accurate copy of that letter.

19. To date, Portfolio Recovery has refused to produce – despite plaintiff's repeated requests (and the CFPB order that it do so) – business records and other information verifying this unsubstantiated debt. Portfolio Recovery has also refused to produce either original account-level documents, verifying Stacey's debt before collecting on it; or specific documents showing the debt was accurate and enforceable.

20. Portfolio Recovery intentionally violated the FDCPA and, in so doing, wantonly violated the CFPB consent decree.

21. As a result, Stacey has suffered and continues to suffer actual damages as a result of the company's unlawful conduct.

22. As a direct consequence of Portfolio Recovery's acts, practices and conduct, she also suffered (and continues to suffer) from humiliation, anger, anxiety, emotional distress, fear, frustration and embarrassment.

23. In fact, Portfolio Recovery's conduct – *i.e.*, continuing the unlawful collection practices that the CFPB ordered stopped *eight* months ago – is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

# COUNT ONE

## Fair Debt Collection Practices Act

## 15. U.S.C. § 1692, et seq.

### False or Unsubstantiated Representations About Owing a Debt

24. Portfolio Recovery represented directly or indirectly, expressly or by implication, that Stacey owed debts to the company with certain unpaid balances, interest rates, and payment due dates; and that the company had a reasonable basis for representing that Stacey owed the claimed debts to it.

25. In truth, these representations set forth in the paragraph above were false or were not substantiated at the time they were made, including but not limited to where: (a) Stacey disputed, challenged, or questioned the validity or accuracy of the debt and Portfolio Recovery failed to review information that would have been necessary to have a reasonable basis to continue collecting on that debt; and (b) the company had knowledge or reason to believe that its collection efforts were based on unreliable data, but failed to obtain and review information that would have been necessary to have a reasonable basis to collect on the account.

26. The representations set forth above were, thus, false or misleading and constitute deceptive acts or practices in violation of Sections 807 and 807(10) of the FDCPA, 15 U.S.C. §§ 1692e, 1692e(10).

27. These representations also constitute a knowing and willful violation of the CFPB consent decree. *See* Exhibit A, pp. 23-24.

**Misrepresenting that Portfolio Recovery Intended to Prove the Debt**

28. Portfolio Recovery represented directly or indirectly, expressly or by implication, that it intended to prove that Stacey owed debts to the company, if contested.

29. In truth, Portfolio Recovery did not intend to prove its claims, if contested, because it does not have (a) account-level documentation from the original creditor, proving that Stacey owed money to the company; (b) proof that the documents attached to its March 1, 2016 letter were specific to her; and (c) the content of account agreements purportedly creating this debt.

30. The representations set forth above were false or misleading and constitute deceptive acts or practices in violation of Sections 807, 807(5), and 807(10) of the FDCPA, 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10).

31. These representations also constitute a knowing and willful violation of the CFPB consent decree. *See* Exhibit A, p. 24.

**Misrepresenting that Portfolio Recovery Investigated, Reviewed and Confirmed the Debt**

32. Portfolio Recovery also represented directly or indirectly, expressly or by implication, that it had investigated, reviewed, and confirmed: (a) account-level documentation from the original creditor proving that Stacey owed money to the company; (b) proof that the documents attached to its March 1, 2016 letter were specific to her; and (c) the content of account agreements purportedly creating this debt.

33. In truth, Portfolio Recovery had not investigated, reviewed, and confirmed any of the above documents or information.

34. The representations set forth above are false or misleading and constitute a deceptive act or practice in violation of Sections 807, and 807(10) of the FDCPA, 15 U.S.C. §§ 1692e, 1692e(10).

35. These representations also constitute a knowing and willful violation of the CFPB consent decree. *See* Exhibit A, pp. 24-25.

36. The above acts and omissions constitute multiple FDCPA violations, entitling Stacey to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from the defendant.

## COUNT TWO
### Rosenthal Fair Debt Collection Practices Act
### Cal. Civil Code § 1788 et seq.

37. The Rosenthal Fair Debt Collection Practices Act, California Civil Code section 1788 et seq. ("Rosenthal Act") prohibits unfair and deceptive acts and practices in the collection of consumer debts.

38. Specifically, Portfolio Recovery's false and misleading statements to Stacey under the FDCPA also violated the Rosenthal Act, *e.g.*, Calif. Civil Code § 1788.13(e).

39. Because Portfolio Recovery did not comply with the FDCPA, the company also violated Calif. Civil Code § 1788.17.

40. The above acts and omissions constitute multiple Rosenthal Act violations, entitling Stacey to actual damages; statutory damages in an amount up to $1,000.00; and, reasonable attorney's fees and costs from the defendant under Calif. Civil Code § 1788.30.

## COUNT THREE

### Intentional Infliction of Emotional Distress

41. Portfolio Recovery's acts, practices and conduct engaged *vis-à-vis* Stacey was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Specifically, Portfolio Recovery knows that its conduct is unlawful, was ordered by the CFPB to stop, and, yet, they continue violating the FDCPA.

42. This conduct constitutes the tort of intentional infliction of emotional distress under the laws of the State of California.

43. Furthermore, Stacey avers under Rule 9(b) that Portfolio Recovery's above acts were committed with malice, intent, wantonness, and recklessness, and as such, the defendant is subject to imposition of punitive damages.

44. Portfolio Recovery could reasonably foresee its conduct would cause mental anguish and severe emotional distress to the plaintiff.

45. And Stacey did indeed suffer mental anguish and severe emotional distress from their conduct.

46. Ergo, Portfolio Recovery's conduct resulted in reckless infliction of emotional distress under the laws of the State of California.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff Stacey Hubbard prays that judgment be entered against defendant Portfolio Recovery Associates LLC as follows:

a. Actual damages in the amount of $35,000 against the defendant for the harm she suffered.

b. Statutory damages of $1,000.00 against the defendant;

c. An injunction prohibiting Portfolio Recovery from reselling her alleged debt to other debt collectors, to protect the company from harming her further by selling and reselling debts that are inaccurate or lack the business records (and information) needed to collect them.

d. Costs of litigation and reasonable attorney's fees against the defendant;

e. Punitive damages; and

f. Such other and further relief as may be just and proper.

Dated: June 6, 2016                DISABLED ADVOCACY GROUP. APLC


 /s/ Scottlynn J Hubbard
SCOTTLYNN J HUBBARD
Attorney for Plaintiff